UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                                                       CIVIL ACTION NO.   5:19-cv-00537

REAL PROPERTY SITUATED AT
433 4-H LAKE DRIVE, DANIELS,
RALEIGH COUNTY, WEST VIRGINIA,
together with all improvements, fixtures,
and appurtenances thereon, and all leases, rents,
and profits derived therefrom;

REAL PROPERTY SITUATED AT
219 N. EISENHOWER DRIVE, BECKLEY
RALEIGH COUNTY, WEST VIRGINIA,
together with all improvements, fixtures,
and appurtenances thereon, and all leases, rents,
and profits derived therefrom;

AND

REAL PROPERTY SITUATED AT
210 PARKWOOD DRIVE, BECKLEY
RALEIGH COUNTY, WEST VIRGINIA,
together with all improvements, fixtures,
and appurtenances thereon, and all leases, rents,
and profits derived therefrom;

           Defendants.

**VERIFIED COMPLAINT OF FORFEITURE**

Comes now, the United States of America ("Plaintiff"), by and through its attorneys, Michael B. Stuart, United States Attorney for the Southern District of West Virginia, and Kathleen Robeson, Assistant United States Attorney for the Southern District of West Virginia, and respectfully brings this Verified Complaint (the "Complaint") and alleges as follows in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and to the extent applicable 18 U.S.C. §§ 981, 983, 984, and 985, and the Federal Rules of Civil Procedure.

## NATURE OF ACTION

1. This is a civil action *in rem* brought on behalf of the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), to enforce the provisions for the forfeiture of defendant real properties, constituting proceeds of, or which was used or intended to be used in any manner or part to commit or to facilitate the commission of one or more violations of 18 U.S.C. §§ 1341, 1343, 1344 and 1957.

2. This action seeks forfeiture of all right, title and interest in the above-captioned properties because the properties constitute or are derived from proceeds of mail, wire, and bank fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344. The properties also are involved in monetary transactions in violation of 18 U.S.C. § 1957. Specifically, as set forth more fully below, Natalie Cochran defrauded multiple investors of her companies, Tactical Solutions Group, LLC ("TSG") and Technology Management Solutions, LLC ("TMS"), two purported government contractors. As a result of the fraud, Natalie Cochran obtained millions of dollars in fraud proceeds in her personal bank account as well as the TSG and TMS business accounts. Using these illicit proceeds, Natalie Cochran engaged in numerous transactions in violation of the money laundering laws, including transactions that ultimately resulted in the purchase of two of the real properties identified for forfeiture

2

herein – specifically the properties located at 219 N. Eisenhower Drive, in Beckley, West Virginia and 210 Parkwood Drive in Beckley, West Virginia.

## JURISDICTION AND VENUE

3. Plaintiff brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. §§ 1345 and § 1355(a) because this forfeiture action has been commenced by the United States.

4. This Court has *in rem* jurisdiction pursuant to: (1) 28 U.S.C. § 1355(b)(1)(A), because acts and omissions giving rise to the forfeiture occurred in this district; and (2) 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the property is located within this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omission giving rise to the forfeiture occurred in this district.

## STATUTORY BACKGROUND

6. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or any conspiracy to commit any such violation, is forfeitable to the United States.

7. Pursuant to 18 U.S.C. § 1956(c)(7)(A), the definition of a specific unlawful activity includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

8. 18 U.S.C. § 1961(1)(B) lists, mail fraud in violation of 18 U.S.C. § 1341, as well as wire fraud in violation of 18 U.S.C.§ 1343, and bank fraud in violation of 18 U.S.C. § 1344 as specified unlawful activities.

9. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which was involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1957, and property traceable to such property is forfeitable to the United States.

## THE DEFENDANTS IN REM

10. The defendants are all present and future interest in the following pieces of real property (hereinafter, collectively, the "defendant properties").

    a. Real property situated at 433 4-H Lake Road, Daniels, Raleigh County, West Virginia, together with all improvements, fixtures and appurtenances thereon, and all leases, rents and profits derived therefrom. This defendant real property is more particularly described in that certain deed recorded in the Office of the Clerk of the County Commission for Raleigh County, West Virginia, in Deed Book 5021 at 9018 (hereinafter, the "433 4-H Lake Road property").

    b. Real property situated at 219 N. Eisenhower Drive, Beckley, Raleigh County, West Virginia, together with all improvements, fixtures and appurtenances thereon, and all leases, rents, and profits derived therefrom. This defendant real property is more particularly described in that certain deed recorded in the Office of the Clerk of the County Commission for Raleigh County, West Virginia, in Deed Book 5066 at 8473 (hereinafter, the "219 N. Eisenhower Drive property"). As described below, TSG purchased this property during the time of the fraud.

    c. Real property situated at 210 Parkwood Drive, Beckley, Raleigh County, West Virginia, together with all improvements, fixtures and appurtenances thereon, and all leases, rents, and profits derived therefrom. This defendant real property

is more particularly described in that certain deed recorded in the Office of the Clerk of the County Commission for Raleigh County, West Virginia, in Deed Book 5068 at 6123 (hereinafter, the "210 Parkwood Drive property"). As described below, TSG purchased this property during the time of the fraud.

11. The defendant properties have not been seized but are located within this district and within the jurisdiction of the Court. The United States does not request authority from the Court to seize the defendant property at this time. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

   a. post notice of this action and a copy of the Verified Complaint for Forfeiture *In Rem* on the defendant properties;

   b. serve notice of this action on the defendant properties' owner, and any other person or entity who may claim an interest in the defendant properties along with a copy of this Complaint;

   c. if necessary, request and execute a writ of entry for purposes of conducting an inspection and inventory of the defendant properties; and

   d. file a Notice of Lis Pendens against the defendant properties where the defendant properties are located, identifying the defendant properties as defendants in a civil action.

12. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of the United States Secret Service Special Agent ("SA") Paul Fritz.

## FACTS

13. During the period relevant to this Verified Complaint for Forfeiture <u>In Rem</u>: Michael B. Cochran and Natalie P. Cochran (hereinafter, collectively the "Cochrans) have been partners, owners, and operated Technology Management Solutions LLC (hereinafter "TMS") and Tactical Solutions Group LLC (hereinafter "TSG"). The Cochrans also maintained a residence at the 433 4-H Lake Road property.

14. TSG filed its Articles of Organization of a Limited Liability Company with the State of West Virginia in September of 2017. Within the Articles of Organization, TSG's listed business legal purpose was "[t]o operate a wholesale/resale woman owned small business for purposes of doing business with the government." The primary business location and principal office location listed were the 433 4-H Lake Drive property, located in the Southern District of West Virginia.

## OVERVIEW OF THE FRAUD SCHEME

15. Tactical Solutions Group LLC, has an active registration with the United States Business Registrations since October 3, 2017 for Systems Award Management (SAM) as an authorized government contract or (DUNS 080896857 CAGE 7ZG61).

16. Technology Management Solutions LLC, also has an active registration with the United States Business Registrations since February 1, 2016 as an authorized government contractor (DUNS 080134164 CAGE 7JXQ1).

17. TSG represented through its website and its owners, the Cochrans, to be a leading supplier to the United States Department of Defense ("DOD"), national security agencies, federal civilian agencies, prime contractors, and non-profits worldwide

(https://tacticalsolutionsgroupllc.us.)   Further, it claims to be a certified woman-owned small business that is a West Virginia certified wholesale pharmaceutical distributor.

18. Natalie Cochran and/or Michael Cochran solicited investments from a number of individuals for TSG and/or TMS's government contracts, including a number of contracts supposedly for the Department of Defense.

19. The investor would pay money to TMS or TSG for the purpose of purchasing or investing in an alleged government contract awarded to TSG and/or TMS. TMS and TSG acted as brokers of alleged government contracts.

20. TMS or TSG never received any federal contract awards. Nor did TMS or TSG or the Cochrans receive any funds from state or federal government contracts.

21. Natalie Cochran and/or Michael Cochrans fraudulently solicited investments from individuals to invest in TMS and TSG's government contracts.

22. TMS or TSG were not using investor funds to purchase government contracts as intended, but was instead making partial returns on investment payments using other investor funds.

23. Occasionally, the defrauded investors would receive some funds from TSG, TMS, Natalie Cochran and/or Michael Cochran. However, these payments were made to continue the ruse that TSG, TMS, Natalie Cochran and/or Michael Cochran were receiving payments from government contracts and making returns to investors.

24. The Cochrans also used the illicit investor proceeds to support their outwardly lavish lifestyle by making luxurious purchases, dining out frequently, taking vacations, and making payments towards the defendant properties.

## EFFORTS TO LOCATE THE ALLEGED GOVERNMENT CONTRACTS

25. There have been extensive efforts to identify and locate TMS, TSG, and the Cochrans' legitimate sources of income, including income derived from alleged government contracts.

26. The United States conducted extensive research through government contract databases available to the public online. Information was located indicating that TMS and TSG were authorized/registered government contractors; however, the United States was unable to locate any information that reflected or indicated any federal contracts, solicitations, or awards had been granted to TMS or TSG.

27. For example, a Defense Criminal Investigative Services (DCIS) special agent searched all relevant databases (i.e., FedSpending, Wide Area Work Flow – WAWF, USA Spending, Contractor Performance Assessment System – FAPIIS) containing information on the awarding and granting of any federal government contracts and could not find any contracts that had been awarded to TSG, TMS or the Cochrans. Further, the DCIS special agent queried the Defense Contract Audit Agency (DCAA) and the Defense Contract Management Agency (DCMA) for any audits and contracts associated to TMS and TSG, again with negative results.

28. A search of state government contracts revealed that TSM recevied two West Virginia state contracts on December 19, 2018 awards. One was for 8 Microsoft Surface Books and another for 27 inch Computer Monitors. However, West Virginia canceled both of these contract awards after January 16, 2019 as West Virginia never received any of the goods that were the subject of the purchase orders. West Virginia state officials maintain that no

payments were ever released to TSM, TSG, or the Cochrans as the awards were officially canceled on January 16, 2019.

29. There has also been a detailed review and analysis of all known financial accounts, specifically, personal and business accounts held by the Cochrans, TSM and TSG, as part of the effort to locate any sources of income, or payments, or expenditures associated with purchasing or providing durable goods in support of government contracts. Even after this review and analysis, no other sources of income, payments or expenditures associated with purchasing or providing durable goods in support of government contracts were located.

## EXAMPLES OF FRAUDLENTLY OBTAINED INVESTMENTS

30. Thus, it is upon information and belief, that Natalie and/or Michael Cochran fraudulently solicited at least – and this figure is not conclusive - $2,813,533.14 in combined investments from individuals for their government contracts.

31. Below are several examples of the investment monies that TSG, TSM, Natalie Cochran and/or Michael Cochran received from these investors as a result of their mail, wire, and bank fraud activities.

*Examples of Mail and Wire Fraud Violations within the Scheme*

32. One known investor, (hereinafter, "KI-A") began investing with TMS in June 2017, and then later with TSG with combined investments totaling approximately $407,457.40. The only known identifiable return that KI-A received on these investments to date is approximately $59,643.60. A review of the checks written by KI-A deposited into TMS and TSG bank accounts revealed that several of the checks' memo lines referenced what appear to be government contracts that KI-A believed he/she invested in. For example, a

July 2017 check written by KI-A and deposited into TMS's bank account referenced a DOD contract.

33. Another known investor, (hereinafter, "KI-B") began investing with TSG in January 2018. KI-B invested approximately $467,138.24 with the only potentially identifiable return being approximately $340,532.90. A review of the checks written by KI-B deposited in the TMS and TSG bank accounts revealed that several of the checks' memo lines referenced what appeared to be government contracts that KI-B invested in. For example, there was a deposit in one of the TSG bank accounts from a check written by KI-B that referenced a DOD contract in April of 2018.

34. Another known investor, (hereinafter, "KI-C") began investing with TSG in August 2018. KI-C invested approximately $146,761.00 with the only identifiable return being to date approximately $60,235.00.

35. Another known investor, (hereinafter, "KI-D") began investing with TSG in September 2018. KI-D invested approximately $612,907.00 with no identifiable return.

*Examples of Bank Fraud Activities within the Scheme*

36. In December 2018, Natalie Cochran submitted a loan application to Premier Bank wherein Natalie Cochran and Tactical Solutions Group LLC attempted to borrow $100,000.00 as a line of credit. The purpose of the loan was for business and personal needs. On the December 2018 loan application, she represented that her company was involved in Government Wholesale Supply Contracting business. The collateral used for this loan was to be the accounts receivable of the company. She indicated on the loan application that her business annual income was $21,680,000.00.

10

37. The Cochrans submitted a personal financial statement for this December 2018 loan application. The Cochrans listed their total assets as $523,343,361.00. Their financial statement listed total assets of Tactical Solutions Group LLC as being $522,091,571.00 and the net worth of this business being $934,503,865.00. Their financial statement listed total assets of Technology Management Solutions as being $2,000,000.00 and the net worth being $2,500,000.00.

38. The $100,000.00 loan Natalie Cochran received from Premier Bank was loan number 1005086211 and the agreement, approval, and disbursement of funds occurred on or about April 11, 2019.

39. On or about April 22, 2019, Natalie Cochran submitted another loan application to Premier Bank; she was the sole applicant and signer on this loan application. This loan was for $250,000.00 for a line of credit for business and personal expenses. Natalie Cochran submitted to the Premier Bank a copy of her 2018 personal tax return, Form 1040, as part of the process for obtaining the loan from Premier Bank. Natalie Cochran also submitted a copy of her and her husband's 2017 personal tax return, Form 1040 as part of the loan process.

40. Significant entries on these two (2) tax returns are as follows:

  a. The 2017 return reflects Natalie Cochran earned wages from her Pharmacy job of $92,943 and $12,797 of taxable pension income. The Cochran's attached 2 business returns (Forms Schedule C) to their 2017 Form 1040. The 2017 business return (Schedule C) for Technology Management Solutions listed gross sales of $37,637.00 with a Cost of Goods Sold of $23,620.00 leaving a

    gross profit of $14,017.00. Cochran claimed expenses on this business return totaling $78,783.00 leaving a net loss of $64,766.00.

  b. The 2017 business return (Schedule C) for Tactical Solutions Group LLC listed gross sales of $0.00 with expenses on this business return totaling $7,396.00 resulting in a net loss of $7,396.00.

  c. The 2018 return reflects Natalie Cochran had no wages from her Pharmacy job and no taxable pension income. The Cochrans attached 2 business returns (Forms Schedule C) to their 2018 Form 1040. The 2018 business return (Schedule C) for Technology Management Solutions listed gross sales of $175,972.00 with a Cost of Goods Sold of $1,487.00 leaving a gross profit of $174,485.00. Cochran claimed expenses on this business return totaling $83,678.00 leaving a net profit of $90,807.00.

  d. The 2018 business return (Schedule C) for Tactical Solutions Group LLC listed gross sales and gross profit of $12,406,564.00 with expenses on this business return totaling $295,651.00 resulting in a net profit of $12,110,913.00.

41. Natalie Cochran attached an IRS Form 9465 to her 2018 Form 1040. This form is used to request an Installment Agreement with the IRS when a substantial amount of tax is due the IRS when the return is filed with IRS. According to the information on the Form 9465, Natalie Cochran advised the IRS she owes tax due on her 2018 Form 1040 of $4,822,568.00. She indicated she was making a $500,000 payment on this tax debt, and that it would be paid at the time she filed this 2018 return. Natalie Cochran also indicated she would make monthly payments of $500,000 on this tax debt until the debt is fully paid.

42. The $250,000.00 loan Natalie Cochran received from Premier Bank was loan number 1005086535 and the loan agreement was dated April 22, 2019. The proceeds of this loan were used to pay off the previous $100,000 loan at Premiere Bank. The actual payoff amount was $100,172.99. The remaining loan proceeds were disbursed to Natalie Cochran and at least $137,011.01 were transferred to TSG.

43. Neither Natalie Cochran nor Michael Cochran were employed outside of their work with their businesses, such as TSG and/or TSM, since November of 2017.

    a. Prior to and including a portion of 2017, Michael B. Cochran appears to have received legitimate income through his affiliation with Technology Management Solutions LLC as well as other identifiable sources of legitimate income.

    b. Natalie P. Cochran worked as a licensed Pharmacist at multiple pharmacies until November 2017. Beyond that point, Natalie P. Cochran does not have any readily identifiable source of known income other than through her affiliation as a partner, owner, and operator of Technology Management Solutions LLC and Tactical Solutions Group LLC.

44. Neither Natalie Cochran nor Michael Cochran had any other source of income outside of their illicit proceeds derived from their mail fraud, wire fraud, and bank fraud activities conduct in violation of 18 U.S.C. §§ 1341, 1343, and 1344.

45. Mail, wire, and bank fraud proceeds were used to purchase the defendant properties and/or make significant payments or investments in the defendant properties.

46. The defendant properties were also involved in monetary transactions in violation of 18 U.S.C. § 1957.

## PURCHASES OR PAYMENTS MADE TOWARDS THE DEFENDANT PROPERTIES

47. The Cochrans spent a substantial amount of their illicit proceeds on the defendant properties as detailed below:

   a. *433 4-H Lake Drive:*

   i. The Cochrans purchased the 433 4-H Lake Drive property in April 2006 for approximately $252,900.00. In November 2010, the Cochrans took out a mortgage for this property for $308,750.00 from First Community Bank.

   ii. Financial records show that the Cochrans spent $22,365.66 of the illicit proceeds on their mortgage payments for the 403 4-H Property.

   iii. Financial records show that the Cochrans spent $69,471.77 of their illicit proceeds on materials for the residence. This includes but is not limited to, proceeds spent on improvements, furnishing, fixtures, and appurtenances to this defendant property.

   b. *219 N. Eisenhower Drive Property*

   i. On or about January 12, 2018, TSG purchased the 219 North Eisenhower Drive property for approximately $66,000.00.

   ii. Records indicate that TSG purchased this property free and clear without a mortgage or other lien on the property.

   iii. Financial records show that the Cochrans spent $39,174.56 of their illicit proceeds on materials for the 219 N. Eisenhower property. This includes, but is not limited to, proceeds spent on improvements, furnishings, fixtures, and appurtenances to this defendant property

  iv. Neither the Cochrans, nor TSG, had any legitimate income during the time period that the 219 N. Eisenhower property was purchased. Thus, the entire purchase of the 219 N. Eisenhower property as well as the $39,174.56 spent towards improvements, furnishings, fixtures, and appurtenances to this defendant property were funded with illicit proceeds.

 c. *210 Parkwood Drive Property*

  i. On or about November 6, 2018, TSG purchased the property located at 210 Parkwood Drive in Raleigh County. The 210 Parkwood Drive property was purchased for approximately $138,000.00.

  ii. Records indicate that TSG purchased this property free and clear without a mortgage or other lien on the property.

  iii. Financial records show that the Cochrans spent $73,718.91 of their illicit proceeds on materials for the 210 Parkwood Drive property. This includes, but is not limited to, proceeds spent on improvements, furnishings, fixtures, and appurtenances to this defendant property.

  iv. Neither the Cochrans, nor TSG, had any legitimate income during the time period that the Parkwood property was purchased. Thus, the entire purchase of the Parkwood property as well as the $73,718.91 spent towards improvements, furnishings, fixtures, and appurtenances to this defendant property were funded with illicit proceeds.

48. For the foregoing reasons, the defendant properties are forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) because the defendant properties were either purchased with illicit proceeds or substantial payments towards the mortgage or

improvements, fixtures and appurtenances to the defendant properties have been made using illicit mail, wire and/or bank fraud proceeds. The defendant properties are also forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A) because the defendant properties were also involved in monetary transactions in violation of 18 U.S.C. § 1957, as alleged in the Complaint.

## CLAIMS FOR FORFEITURE

49. The allegations contained in paragraphs 1 through 48 of this Verified Complaint for Forfeiture in Rem are incorporated herein and made a part hereof.

50. The defendant properties and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1341.

51. The defendant properties, and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1343.

52. The defendant properties, and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1344.

53. The defendant properties, and all property traceable thereto, are also subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) as property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1957.

54. As a result of the foregoing, the defendant properties and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(a) and 981(a)(1)(C).

## CONCLUSION

55. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title and interest in the defendant properties vested in the United States at the time of the commission of the unlawful acts giving rise to forfeiture has become and is forfeitable to the United States.

WHEREFORE, the United States requests that notice of this action be given to all persons who reasonably appear to be potential claimants to the defendant property; that judgment be entered declaring the defendant properties to be forfeited and condemned to the United States of America for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and that the Court award such other and further relief as it deems proper and just, including but not limited to expenses of maintenance and protection of the defendant properties as required by 28 U.S.C. § 1921.

           Respectfully submitted,

           MICHAEL B. STUART
           United States Attorney

By:    /s/Kathleen Robeson
        KATHLEEN ROBESON
        Assistant United States Attorney
        VA State Bar No. 89526
        300 Virginia Street, East
        Room 4000
        Charleston, WV 25301
        Telephone: 304-345-2200
        E-mail: kathleen.robeson@usdoj.gov

## **VERIFICATION**

STATE OF WEST VIRGINIA
COUNT OF KANAWHA, TO WIT:

I, Paul Fritz, an agent with the United States Secret Service declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I personally have prepared or gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on  7-18 , 2019.

Paul Fritz

Taken, subscribed and sworn to before me this 18th day of July, 2019.



Notary Public

My commission expires on  4-24-2023 .

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
433 4-H Lake Drive, Daniels, WV; 219 N. Eisenhower Drive, Beckley, WV; 210 Parkwood Drive, Beckley, WV

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Raleigh, West Virginia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Kathleen Robeson; United States Attorney's Office; 300 Virginia Street, Suite 4000; Charleston, WV 25301

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated *or* Principal Place of Business In This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated *and* Principal Place of Business In Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| □ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 422 Appeal 28 USC 158 | □ 375 False Claims Act |
| □ 120 Marine | □ 310 Airplane / □ 365 Personal Injury - Product Liability | [X] 690 Other | □ 423 Withdrawal 28 USC 157 | □ 376 Qui Tam (31 USC 3729(a)) |
| □ 130 Miller Act | □ 315 Airplane Product Liability / □ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | □ 400 State Reapportionment |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander |  | □ 820 Copyrights | □ 410 Antitrust |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers' Liability / □ 368 Asbestos Personal Injury Product Liability |  | □ 830 Patent | □ 430 Banks and Banking |
| □ 151 Medicare Act | □ 340 Marine |  | □ 835 Patent - Abbreviated New Drug Application | □ 450 Commerce |
| □ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | □ 345 Marine Product Liability | **PERSONAL PROPERTY** | □ 840 Trademark | □ 460 Deportation |
| □ 153 Recovery of Overpayment of Veteran's Benefits | □ 350 Motor Vehicle / □ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 160 Stockholders' Suits | □ 355 Motor Vehicle Product Liability / □ 371 Truth in Lending | □ 710 Fair Labor Standards Act | □ 861 HIA (1395ff) | □ 480 Consumer Credit |
| □ 190 Other Contract | □ 360 Other Personal Injury / □ 380 Other Personal Property Damage | □ 720 Labor/Management Relations | □ 862 Black Lung (923) | □ 485 Telephone Consumer Protection Act |
| □ 195 Contract Product Liability | □ 362 Personal Injury - Medical Malpractice / □ 385 Property Damage Product Liability | □ 740 Railway Labor Act | □ 863 DIWC/DIWW (405(g)) | □ 490 Cable/Sat TV |
| □ 196 Franchise |  | □ 751 Family and Medical Leave Act | □ 864 SSID Title XVI | □ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | □ 790 Other Labor Litigation | □ 865 RSI (405(g)) | □ 890 Other Statutory Actions |
| □ 210 Land Condemnation | □ 440 Other Civil Rights / **Habeas Corpus:** | □ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | □ 891 Agricultural Acts |
| □ 220 Foreclosure | □ 441 Voting / □ 463 Alien Detainee |  | □ 870 Taxes (U.S. Plaintiff or Defendant) | □ 893 Environmental Matters |
| □ 230 Rent Lease & Ejectment | □ 442 Employment / □ 510 Motions to Vacate Sentence |  | □ 871 IRS—Third Party 26 USC 7609 | □ 895 Freedom of Information Act |
| □ 240 Torts to Land | □ 443 Housing/ Accommodations / □ 530 General |  |  | □ 896 Arbitration |
| □ 245 Tort Product Liability | □ 445 Amer. w/Disabilities - Employment / □ 535 Death Penalty | **IMMIGRATION** |  | □ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| □ 290 All Other Real Property | □ 446 Amer. w/Disabilities - Other / **Other:** / □ 540 Mandamus & Other | □ 462 Naturalization Application |  | □ 950 Constitutionality of State Statutes |
|  | □ 448 Education / □ 550 Civil Rights | □ 465 Other Immigration Actions |  |  |
|  | □ 555 Prison Condition |  |  |  |
|  | □ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 18 United States Code Section 981
Brief description of cause:
Forfeiture of mail/wire/bank fraud proceeds and transactions in violation of money laundering

## VII. REQUESTED IN COMPLAINT:
□ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: □ Yes  □ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE: 7/23/19
SIGNATURE OF ATTORNEY OF RECORD: *Kathleen Robeson* (signature)

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____